FILED

2007 Nov-01  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHELIA BODDIE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-1741-S |
| | } | |
| THE CHILDREN'S HOSPITAL OF | } | |
| ALABAMA, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, The Children's Hospital of Alabama, Inc. ("Children's"), for summary judgment in the above-entitled action brought by plaintiff, Shelia Boddie ("Boddie"). Boddie claims Children's discriminated and retaliated against her on the basis of race, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, *et seq.*, and 42 U.S.C. § 1981. For the reasons that follow, Children's motion will be denied.

**I. Facts**

In November 2001, Boddie was hired to work as a nurse at Children's After-Hours Clinic ("the Clinic"). In January 2003, she was promoted to the position of clinic coordinator. In 2005, Boddie began to complain to her supervisors about racial discrimination at the Clinic. Boddie was the only black nurse at the Clinic and felt that her co-workers did not follow her orders and sought to

undermine her authority. Boddie also complained about discrimination in patient treatment and employee scheduling. Boddie's latest complaint about the problems with discrimination at the Clinic occurred on June 3, 2002 in a meeting with Susan Thorn from human resources. After an investigation, Thorn informed Boddie that Children's was unable to substantiate her allegations. Boddie contends that Children's failed to adequately investigate her complaints.

The events that gave rise to Boddie's termination occurred on August 27, 2005 and began when Boddie was informed by Tiana Character, a clinical assistant, that Robin Prater ("Prater"), one of the white nurses, was pre-signing triage assessment sheets (also known as "face sheets"). Boddie alleges that she had repeatedly warned Prater and the other nurses not to pre-sign the face sheets. Under Clinic policy, the face sheet should only be signed after the clinical assistant has taken a patient's vital signs and presented the sheet to the nurse for her review and eventual signature. After being given the pre-signed face sheet by Character, Boddie filled in false vital signs on the sheet and instructed Character to give the sheet back to Prater. The patient associated with the now falsified face sheet had never been called back to the triage area and was still in the waiting room. After observing Prater's alarm at reviewing the vital signs entered on the face sheet, Boddie informed Prater that there was no patient in the triage area waiting to be seen and eventually made her understand that the

vital signs had been fabricated. Boddie also told Prater that she entered the false information on the face sheet in order to teach her a lesson about the danger of pre-signing the forms. Prater claims to have been embarrassed by the episode. As a result of this incident, Boddie was placed on administrative leave on August 29, 2005 and terminated on September 2, 2005. Prater was not terminated and instead received either written or oral counseling for signing blank forms. The Children's personnel who made the decision to terminate Boddie were aware of her previous complaints about discrimination at the Clinic. Boddie appealed her termination through Children's administrative review process, but the decision to terminate her employment was affirmed by the hospital CEO on October 9, 2005.

Boddie filed a complaint with the Equal Employment Opportunity Commission on February 1, 2006. After receiving her right-to-sue letter, Boddie filed suit in this court on September 5, 2006.

## II. Summary Judgment Standard

In considering a Rule 56 motion, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court can enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court does not "weigh the evidence and determine

the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

## III. Legal Analysis

*Discrimination Claim*

Boddie claims that her termination was discriminatory in violation of Title VII and § 1981. In cases such as this one, where plaintiff offers only circumstantial evidence of discrimination, the sufficiency of her Title VII and § 1981 discrimination claims are evaluated under the familiar three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). To satisfy her *prima facie* burden, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees outside the protected class more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations omitted). If the plaintiff successfully establishes a *prima facie* case, the defendant-employer must articulate a legitimate, nondiscriminatory reason for the challenged employment practice. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Finally, if the employer articulates one or more nondiscriminatory reasons, the plaintiff must present sufficient evidence to permit a reasonable

fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Id.* at 1272-73.

As both parties correctly perceive in their briefs, the viability of Boddie's discrimination claim depends on whether Robin Prater is an appropriate similarly situated comparator. In other words, the critical issue is whether Prater's pre-signing the face sheet is comparable to Boddie's entering false vital signs on the face sheet.

In order to satisfy the similarly situated comparator prong of the *prima facie* case, the plaintiff "must show that [s]he and the non-minority employee with whom [s]he seeks comparison are 'similarly situated in all relevant respects.'" *Wright v. Sanders Lead Co.*, 217 Fed. Appx. 925, 929 (11th Cir. 2007) (*quoting Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). In cases involving discriminatory discipline, to determine whether employees are similarly situated the court must evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia*, 171 F.3d at 1368 (citations and quotation marks omitted). The Eleventh Circuit has noted that "the quality and quantity of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing

apples with oranges."[1] *Id.* "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

After reviewing applicable precedent, it is clear that the question of whether Boddie and Prater are similarly situated is a close call. Both woman were disciplined for violating Clinic policy with respect to face sheets. Prater was counseled for her pre-signing the face sheets and Boddie was fired for entering false vital signs in an effort to teach Prater a lesson. Children's argues that Boddie's conduct was more egregious because falsifying medical documents could lead to patients receiving inappropriate treatment. Boddie argues that Prater's conduct was more egregious because pre-signing face sheets could lead to patients with serious medical conditions being placed in a treatment room when more urgent care is needed. Children's further argues that Boddie entering the false vital signs is categorically more egregious because Prater never falsified any document. On the other hand,

---

[1] However, other Eleventh Circuit panels have noted that "the law does not require that a 'similarly situated' individual be one who has 'engaged in the same or nearly identical conduct' as the disciplined plaintiff. Instead, the law only requires 'similar' misconduct from the similarly situated comparator." *Anderson v. WBMG-42*, 253 F.3d 561, 565 (11th Cir. 2001); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1333-1334 (11th Cir. 2000). The court only notes this difference of opinion within the Eleventh Circuit to point out that Boddie would survive summary judgment under either standard.

Boddie contends that Prater's actions amounted to a pattern and practice of falsely certifying that she had completed work while Boddie's conduct was a single, controlled exercise to teach Prater the importance of following proper protocol. The court concludes that a reasonable jury could accept either party's version of the comparative seriousness of the nurses' conduct or could conclude that the conduct was equally egregious.

The court is struck by both parties' failure to cite *Pearson v. Macon-Bibb County Hospital Authority*, 952 F.2d 1274 (11th Cir. 1992), a case with notable factual similarities to the case at bar. In *Pearson*, a black senior nurse was terminated after an incident involving several nurses in which a package of contaminated surgical instruments was improperly left untended in an operating room area. *Id.* at 1276. Even though several white nurses failed to notice the contaminated instruments, the plaintiff black nurse was the only nurse fired as a result of the incident. *Id.* at 1276-77. In granting summary judgment to the defendant hospital, the district court ruled that the white nurses were not appropriate comparators because the black senior nurse was charged with greater overall responsibility than the white nurses. *Id.* at 1280. The Eleventh Circuit reversed the district court's grant of summary judgment and, in doing so, noted that the plaintiff's "higher employment position in itself" does not defeat her *prima facie* case. *Id.*

In accordance with the holding in *Pearson*, the court is not

persuaded by Children's argument that Boddie's status as a coordinator prevents her from being similarly situated to Prater. "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). Here, there is no evidence that Children's had one set of rules for regular nurses and a different set of rules for coordinators. Additionally, the court is not aware of any binding precedent that suggests that an employer's generalized higher expectations of supervisory personnel provides the employer with an excuse to treat employees who engage in "nearly identical" misconduct differently.[2] The misconduct in this case is sufficiently similar to allow a reasonable jury to conclude that Boddie and Prater are similarly situated. In other words, a reasonable jury could conclude that this case involves a comparison between apples and apples, rather than apples and oranges. *See Maniccia*, 171 F.3d at 1369 ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.") *(quoting Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)).

---

[2] *Wright v. Sanders Lead Co.*, 217 Fed. Appx. 925, 929 (11th Cir. 2007), an unpublished case cited by Children's to support its proposition that supervisors are not similarly situated to subordinates, does not say what Children's suggests. The *Wright* court merely drew a distinction between a supervisor who asked a guard not to report one of the supervisor's employees for a rule violation and a laborer who was improperly smoking on company premises. The court only mentioned the employees' positions within the company to point out that they did not engage in similar acts of misconduct. Specifically, the supervisor committed a "breach of trust" by covering up wrongdoing while the laborer committed a "breach of safety" by smoking. *Id.*

Therefore, Boddie has established a *prima facie* case for purposes of summary judgment.

Not surprisingly, Children's proffers Boddie's falsification of the face sheet as a legitimate, non-discriminatory reason for terminating her employment. While Children's has met its burden of production, Boddie has presented sufficient evidence to allow a reasonable fact finder to conclude that the legitimate reason given by the employer was not its true reason, but was a pretext for discrimination. See *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000). The disparity in punishments between Boddie and Prater is a classic example of the type of weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's proffered legitimate reason that could allow a reasonable jury to find it "unworthy of credence." See *Cooper v Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004); *see also McDonnell Douglas*, 411 U.S. at 804 (noting that disparate treatment of employees who engage in misconduct of "comparable seriousness" can be evidence of pretext). The court is mindful that it should not second guess an employer's legitimate business decisions; however, the court cannot supersede the province of a jury in a case, like this one, that involves genuine issues of material fact.[3] Accordingly, Children's motion for summary judgment as to Boddie's discrimination claim will be denied.

---

[3] The court appreciates but declines Boddie's apparent invitation to declare summary judgment unconstitutional.

*Retaliation Claim*

Boddie contends that her termination was retaliation for her complaining about discrimination at the Clinic. In order to state a *prima facie* claim for retaliation under Title VII and § 1981, Boddie must show that "(1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). The only contested issue is whether Boddie's termination was causally related to her complaints.[4] To establish the causal element of her *prima facie* case, Boddie need only show "that the protected activity and the . . . [adverse] action are **not completely unrelated**." *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (emphasis added).

In this case, the nearly three month period between Boddie's last complaint and her termination is insufficient, by itself, to satisfy the causal connection prong. *See Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (noting that a three month disparity is insufficient to show a causal connection). However, Boddie has presented other evidence of discrimination that is sufficient, though just barely, to allow a reasonable jury to conclude that Boddie's complaints and her termination are "not completely unrelated." *See Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1291

---

[4] It is not disputed that the Children's personnel who made the decision to terminate Boddie were aware of her complaints about racial discrimination.

(11th Cir. 2000) (noting that "gaps of time, standing alone, do not preclude a plaintiff from producing enough evidence for a reasonable jury to conclude that protected speech was a substantial factor in the [adverse employment decision]"). Specifically, Boddie alleges that the investigator assigned to look into her complaints never asked her interviewees any questions related to race. More importantly, Boddie also provides a declaration from Melissa Meinke, an Asian nurse who worked at the Clinic with Boddie, that alleges that she was advised by Doug Jones ("Jones"), the head of Children's personnel department, not to pursue her complaints about racial discrimination at the Clinic because doing so might "burn bridges" that she would need to get a job at Children's later. Meinke's allegations are relevant to Boddie's retaliation claim because the alleged comments by Jones could, if believed, suggest that Children's did not look kindly upon employees, like Boddie, who complained about racial discrimination.  A reasonable jury viewing this evidence could conclude, at worst, that Children's was displeased by Boddie's complaints and merely used the falsified face sheet as an excuse to eliminate a troublemaker. Therefore, Boddie has provided sufficient evidence to establish a *prima facie* case of retaliation for purposes of summary judgment.

Because Children's proffers the same legitimate, non-discriminatory reason (falsifying the face sheet) with the retaliation claim as it does with the discrimination claim, the pretext analysis set out above applies here with equal force. In

other words, if the jury concludes that Children's failure to fire Prater proves that its proffered reason for firing Boddie was pretextual, it could conclude that retaliation was the real reason.

**IV. Conclusion**

For the foregoing reasons, the court will deny Children's motion for summary judgment by separate order.

DONE this 1st day of November, 2007.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE